IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| MARY ANN SNEDEKER | : | BANKRUPTCY NO.: 5-17-bk-01399-JJT |
| DEBTOR | : | |
| MARY ANN SNEDEKER | : | {**Nature of Proceeding**: Debtor's Objection to Proof of Claim No. 2 of PYOD, LLC (Doc. #75)} |
| OBJECTOR | : | |
| vs. | : | |
| PYOD, LLC, its successors and assigns as assignee of Citibank, N.A. | : | |
| CLAIMANT | : | |

# **OPINION**[1]

Before the Court for resolution is the pro se Debtor's Objection to Proof of Claim No. 2 filed by creditor, PYOD, LLC, (Doc. #75). The claim in question is for $8,672.97 and is based upon an unsecured, open-ended credit card debt. The Court scheduled a hearing on that objection. At that initial hearing, Debtor took the position that the underlying debt was that of her mother's, and she never gave consent to have her name be placed on the account. She disavowed any knowledge of the purchases represented on the account. The Court asked counsel for the Claimant whether the Claimant had anything with the Debtor's name on it. Counsel responded that he did not have a chance to review all records concerning the Debtor's initial application for credit and asked the Court for additional time to locate the original loan

---

[1] Drafted with the assistance of Richard P. Rogers, Career Law Clerk.

[K:\Cathy\Opinions-Orders filed 2018\5-17-bk-01399-JJT_Snedeker_PYOD pdf]

application and provide same to the Court. The Court granted the Claimant 30 days to locate the original loan application for submission to the Court. A continued hearing on the objection was set for October 24, 2017. On October 23, 2017, one day prior to the hearing, the Claimant delivered to the Court a binder of documents, none of which contained a copy of an original loan application with the Debtor's signature. The matter was subsequently continued to a date in November of 2017, with a subsequent continuance to a final hearing date which took place on May 8, 2018.

During this hearing and contrary to her testimony at the initial hearing, the Debtor testified that she had an account with Sears.[2] (Audio Record of 05/08/2018 at 12:56:56) Further, in response to the Court asking if the Debtor owed Sears money, the Debtor responded, "and then I filed bankruptcy, yes." (Audio Record of 05/08/2018 at 12:57:01) When asked directly whether the Debtor owed Sears approximately $8,000.00, the Debtor responded, "correct, that is about the amount of money I owed Sears." (Audio Record of 05/08/2018 at 12:57:04) Finally, during a discussion of the equities of the Claimant buying this claim or batches of claims for perhaps less than what was owed on the original claim by the Debtor, the Debtor responded that she owed the amount to Sears and Citibank but did not feel that she owed it to the Claimant. (Audio Record of 05/08/2018 at 1:02:08)

It was at this point of the May 8, 2018 hearing that the focus on the issue before the Court changed. The Debtor was no longer claiming she did not owe the underlying debt as she did in the initial hearing held in September of 2017. Rather, she claimed she did not feel she owed any

---

[2] The original debt is on a Sears Mastercard, which underlying debt was subject to several transfers ending with an alleged transfer to the Claimant.

debt to the Claimant because the Claimant could not prove it owned the debt represented by the filed claim. The Court's attention was directed to the attachments to the Proof of Claim, specifically, a copy of a Bill of Sale and Assignment from Citibank, N.A. to an entity referred to as Sherman Acquisition LLC. To paraphrase, the Bill of Sale and Assignment also provided that the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Exhibit 1 and the final electronic file. Further, attached to the Proof of Claim is a Transfer and Assignment from Sherman Acquisition, LLC to PYOD LLC of all of its right, title and interest in and to the receivables and other assets identified on Exhibit A, in the Receivable File dated June 07, 2017 delivered by Citibank, N.A. on June 29, 2017. Exhibit A only provides that it is a receivables file with a transfer group and portfolio number. Notably, the Bill of Sale and Assignment from Citibank, N.A. to Sherman Acquisition LLC did not contain Exhibit 1 as referenced therein. When asked by the Court why Exhibit 1 was not attached to the Proof of Claim and why Exhibit A did not list the exact accounts that were transferred from Sherman Acquisition LLC to PYOD LLC, Claimant's counsel indicated that he thought those documents were just a list of accounts that he could recover and later provide to the Court with all other account numbers redacted. Noting that the hearing was complete, the Court closed the record and took the matter under advisement.

      The issues raised by this Objection, namely, the standing of Claimants to file claims and the adequacy of the supporting documentation attached to claims by way of transfer and assignment agreements, are no stranger to this Court and have been addressed by written

Opinions in several cases.³ In fact, in all the prior referenced cases, each contained objections to proofs of claim which had attached bills of sale and transfers and assignment agreements strikingly similar in language to those presented in the instant case. One important distinction from this case and the other cases is that none of the objectors in the previous cases testified at the time of the hearing on the objection, unlike the Debtor who did testify in this case.

Another difference this case presents from the prior cases is the application of Federal Rule of Bankruptcy Procedure 3001(c)(3)(B), which reads as follows: "On written request by a party in interest, the holder of a claim based on an open-end or revolving consumer credit agreement shall, within 30 days after the request is sent, provide the requesting party a copy of the writing specified in paragraph (1) of this subdivision." Here, not only did the Court direct the Claimant to locate the original loan application and submit it to the Court at the initial hearing on this Objection, but the same request was made, albeit in an inarticulate manner, by the Debtor to the Claimant by way of a subpoena. See Doc. #201, Attachment "A" at ¶ 1.

The Rule applicable to this Objection provides, in pertinent part, as follows:

Rule 3001 Proof of Claim.

(c) *Supporting Information*.

(1) *Claim Based on a Writing*. Except for a claim governed by paragraph (3) of this subdivision, when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

. . .

---

³ *In re Mayne*, 2015 WL 6459995 (Bankr. M.D. Pa. Oct. 26, 2015); *In re Coppedge*, 555 B.R. 456 (Bankr. M.D. Pa 2016); *In re Miceli*, 556 B.R. 655 (Bankr. M.D. Pa. 216)

> (3) *Claim Based on an Open-End or Revolving Consumer Credit Agreement.*
>> (A) When a claim is based on an open-end or revolving consumer credit agreement—except one for which a security interest is claimed in the debtor's real property—a statement shall be filed with the proof of claim, including all of the following information that applies to the account:
>>> (i) the name of the entity from whom the creditor purchased the account;
>>> (ii) the name of the entity to whom the debt was owed at the time of an account holder's last transaction on the account;
>>> (iii) the date of an account holder's last transaction;
>>> (iv) the date of the last payment on the account; and
>>> (v) the date on which the account was charged to profit and loss.
>> (B) On written request of a party in interest, the holder of a claim based on an open-end or revolving consumer credit agreement shall, within 30 days after the request is sent, provide the requesting party a copy of the writing specified in paragraph (1) of this subdivision.

Further explaining the amendment to Rule 3001(c) is the following found in the Advisory Committee Note to the 2012 Amendment to the Rule.

> A proof of claim executed and filed in accordance with subparagraph (A), as well as the applicable provisions of subdivisions (a), (b), (c)(2), and (e), constitutes prima facie evidence of the validity and amount of the claim under subdivision (f).
>
> **To the extent that paragraph (3) applies to a claim, paragraph (1) of subdivision (c) is not applicable**. A party in interest, however, may obtain the writing on which an open-end or revolving consumer credit claim is based by requesting in writing that documentation from the holder of the claim. The holder of the claim must provide the documentation within 30 days after the request is sent. The court, for cause, may extend or reduce that time period under Rule 9006. (Emphasis ours.)

Reviewing the prima facie evidentiary effect of proofs of claim, I find the following helpful.

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "*prima facie*" valid. *In re Holm*,

> 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, *Collier on Bankruptcy* § 502.02, at 502-22 (15th ed. 1991)). In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case. *Id.; see In re Windsor Communications Group, Inc.*, 45 B.R. 770, 773 (Bankr.E.D.Pa.1985). In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. *See In re WHET, Inc.*, 33 B.R. 424, 437 (Bankr.D.Mass.1983). **The burden of persuasion is always on the claimant**. *Holm*, 931 F.2d at 623 (quoting *Collier* § 502.02, at 502-22); *Windsor Communications*, 45 B.R. at 773.

*In re Allegheny International, Inc., et al.*, 954 F.2d 167, 173 (3rd Cir. 1992). (Emphasis ours)

The Proof of Claim subject to this Objection meets the prima facie requirements of Federal Rule of Bankruptcy Procedure 3001(f). I now look to the record to determine what evidence, if any, the Objector presented at the time of the hearing to negate the prima facie validity of the claim. The only evidence presented by the Objector was her testimony which admitted that the obligation represented by the claim was hers, and she did owe the amount listed in the claim. She disputed, however, to whom she owed the underlying debt. I find that Debtor's evidence falls short of negating the prima facie validity of the claim. But, what impact does the Court's request and, more significantly, the Debtor's request for production of the original revolving consumer credit agreement under Rule 3001(c)(3)(B), have on the Court's determination?

9 Collier on Bankruptcy ¶ 3001.01[3] at 3001-10 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) reinforces the Court's position that a claimant does not need to file a copy of the open-end or revolving consumer credit agreement on which the claim is based when it files its proof of claim. That same paragraph further provides that "[i]f a claimant fails to comply with a

Rule 3001(c)(3)(B) request at all, or fails to comply in a timely manner, the remedy is sanctions, not disallowance of the claim. However, if there is an objection to the claim, the claimant may be precluded from presenting evidence in opposition to the objection, and this may result in disallowance of the claim."

As to what sanctions the Court may apply in this circumstance where there was a failure to supply a copy of the open-end consumer credit agreement, the Court directs the parties' attention to Federal Rule of Bankruptcy Procedure 3001(c)(2)(D).

> (D) If the holder of a claim fails to provide any information required by this subdivision (c), the court may, after notice and hearing, take either or both of the following actions:
> (i) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
> (ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

The Court has determined that awarding reasonable expenses and/or attorney's fees caused by the failure to provide the information requested is not an appropriate sanction in this case. The sanction the Court can impose upon the Claimant is to preclude the Claimant from presenting any evidence in any form in this contested matter, unless the Court finds that the failure to produce the documentation was substantially justified or is harmless.

The Court simply cannot ignore the fact that it directed the Claimant at the initial hearing on this matter in September of 2017 to produce, within thirty days of the date of that hearing, a document with the Debtor's original signature. Furthermore, the Debtor followed up as referenced above with her own request for that documentation, albeit in a subpoena request that probably fell short of meeting the subpoena requirements under the Federal Rules of Bankruptcy

Procedure. Nonetheless, a request was made for that documentation. Throughout this proceeding, counsel for the Claimant never put forth any reasonable explanation as to why this documentation was not provided nor was any excuse proffered as to why the documentation could not be provided or what steps were made, if any, by the Claimant to investigate and produce the documentation. As quoted above, the burden of persuasion is always on the Claimant. I find that the failure to produce the original documentation with the Debtor's signature is fatal to the creditor's argument to refute the Objection by the Debtor that she does not owe any debt to this Claimant. The Court hereby finds, based upon all of the above, that the claim of the Claimant is disallowed in its entirety.

    My Order will follow.

By the Court,

_____
John J. Thomas, Bankruptcy Judge (CMP)

Date: July 25, 2018